**ELVIS PEDRO, Plaintiff**

**v.**

**EVANS HUGGINS, Defendant**

Civil No. SX-98-CV-792

Superior Court of the Virgin Islands

Division of St. Croix

March 5, 2010

LEE J. ROHN, ESQ., TRUDY FENSTER, ESQ., Law Offices of Rohn & Cameron, LLC, Christiansted, St. Croix, U.S. Virgin Islands, *Counsel for Plaintiff.*

CARROLL, *Judge*

## MEMORANDUM OPINION AND ORDER

(March 5, 2010)

**THIS MATTER** came on for hearing on March 20, 2009. Plaintiff was present and represented by Trudy Fenster, Esq., of the Law Offices of Rohn & Cameron, LLC. Defendant did not appear by counsel or in person at the hearing. Based upon the failure of the Defendant to appear for the hearing, the Court directed that default be entered against the Defendant

pursuant to SUPER. CT. R. 47[1] and proceeded to hold a hearing on the request for judgment by default made pursuant to SUPER. CT. R. 48(b). After hearing the testimony, the Court found that Defendant is clearly liable to the Plaintiff, and should pay damages. However, before issuing its judgment, the Court asked Attorney Fenster to brief several issues concerning the damages sought. The Court, having considered Plaintiff's submission, will direct Plaintiff to submit its findings of fact and conclusions of law and a proposed judgment, as well as make any application for attorney's fees and costs, in conformity with this Memorandum Opinion and Order.

The Court asked the Plaintiff to brief the following issues: (1) the effect of the abrogation of the collateral source rule in the Virgin Islands upon any damages being sought by the Plaintiff for the destruction of the automobile that had been reimbursed by insurance; (2) whether Plaintiff can recover for the total estimated cost of repair of the automobile beyond the sum actually reimbursed by insurance when the sum received by Plaintiff from the insurance company represented the actual value of the automobile at the time of the loss; (3) whether Plaintiff is entitled to recover the loss of use of the automobile, as measured by the cost of renting a comparable automobile on a monthly basis for two months, when he admitted that he never rented a replacement automobile during the time that he did not have transportation; and (4) whether an award of the costs enumerated in Plaintiff's Exhibit One is justified by the pertinent statute, V.I. CODE ANN. tit. 5, § 541 (1997).

### 1. Collateral Source Rule

Plaintiff, citing the Collateral Source Rule asserts that the Court should not consider any sources of compensation independent of the tortfeasor when deciding how much to award him in damages. The Court agrees with Plaintiff's interpretation, in this instance, about the applicability of the collateral source rule in the Virgin Islands.

The collateral source rule provides "that if an injured party receives compensation for the injuries from a source independent of the tortfeasor,

---

[1]    SUPER. CT. R. 47 provides that "[w]hen a party against whom affirmative relief is sought has failed to appear, plead or otherwise defend as provided by law or these rules, or has failed to appear at the time fixed for trial, the clerk shall enter his default."

the payment should not be deducted from the damages that the tortfeasor must pay." BLACK'S LAW DICTIONARY 299 (9th ed. 2009); RESTATEMENT (SECOND) OF TORTS § 920A(2) (1979).[2] This doctrine has been limited in the Virgin Islands by V.I. CODE ANN. tit. 5, § 427 (1997) ("§ 427"), which provides that "[i]n any cause of action alleging damages for medical expenses or lost income sustained by or on behalf of a party, including, without limitation, actions alleging damages for bodily injury, death or property damage, or any combination thereof, the collateral source rule shall not be applied." Therefore, in the Virgin Islands, where a party claims damages for medical expenses or lost income, "[a]ny party may introduce evidence that the other party who is claiming damages . . . has received, or is entitled to receive, other compensation for such damages, including, but not limited to . . . medical and hospital insurance," among other things. V.I. CODE ANN. tit. 5, § 427.

■ It is a well-established and longstanding principle that "[s]tatutes which invade the common law . . . are to be read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident." *U.S. v. Texas*, 507 U.S. 529, 534 (1993) (quoting *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783, 72 S. Ct. 1011, 96 L. Ed. 1294 (1952)) (further citations omitted). Section 427, which limits the collateral source rule as established by the common law, must be strictly construed. *Isbrandtsen Co.*, 343 U.S. at 783; *Jamison v. Encarnacion*, 281 U.S. 635, 640 (1930) ("The rule that statutes in derogation of the common law are to be strictly construed does not require such an adherence to the letter as would defeat an obvious legislative purpose or lessen the scope plainly intended to be given to the measure.").

■■ Plaintiff argues that § 427 should only be applied in actions for damages based on bodily injury, death or property damage where the party also requests medical expenses and lost income, thereby permitting the opposing party to introduce evidence of other sources of funds from which the claimed damages have been or can be satisfied. In strictly

---

[2]  V.I. CODE ANN. tit. 1, § 4 (1995), provides that:

   [t]he rules of the common law, as expressed in the restatement of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

construing the language of the statute, the Court agrees with Plaintiff's interpretation of § 427. Moreover, the Court finds that said interpretation does not adhere to the letter of the law in such a way as to defeat the obvious legislative purpose or lessen the scope plainly intended to be given to the measure. On the contrary, the language of the statute itself acknowledges that it is not a wholesale abrogation or nullification of the collateral source rule. The very title of the statute indicates that it is to act as a mere limitation in the application of the collateral source rule. Additionally, language throughout the statute evinces that the statute focuses on causes of action alleging damages for medical expenses or lost income.[3]

Because the collateral source rule limitation does not apply in the instant matter for the reasons outlined above, the Court will not consider any evidence indicating that Plaintiff may have received or may be entitled to receive other compensation for any damages he sustained.

### 2. Recovery of Repair Costs Beyond the Actual Value of the Car

Plaintiff seeks compensation for the difference between the Kelley Blue Book value of the car at the time it was destroyed and the amount it would have cost to repair it. According to Plaintiff's evidence, it would have cost Twelve Thousand Two Hundred Twenty-Four Dollars ($12,224.00) to repair the vehicle. Plaintiff also provided testimony that the Kelley Blue Book value of the car at the time of the accident was approximately Ten Thousand Dollars ($10,000.00), which corresponds with the amount Plaintiff was paid by his insurance company. The Court finds that Plaintiff is not entitled to receive compensation beyond the

---

[3]  § 427. Collateral source rule limitation

In any cause of action alleging damages for medical expenses or lost income sustained by or on behalf of a party, including, without limitation, actions alleging damages for bodily injury, death or property damage, or any combination thereof, the collateral source rule shall not be applied. Any party may introduce evidence that the other party who is claiming damages for medical expenses or lost income has received, or is entitled to receive, other compensation for such damages, including, but not limited to benefits from workmen's compensation, medical and hospital insurance, prepaid health care, social security, retirement or pension, and any employer paid program, such as wage continuation and disability benefits programs. Nothing in this section shall be construed to reduce any award where there is a statutory lien against the judgment as a result of a third party payment.

V.I. CODE ANN. tit. 5, § 427 (emphasis added).

actual value of the vehicle, which is based on the Kelley Blue Book figure.

While the case law on this issue is surprisingly scant, Plaintiff cites *In re Madison*, 186 B.R. 182, 184 (Bankr. E.D. Pa. 1995), to bolster his assertion. This Pennsylvania bankruptcy court case undercuts Plaintiff's argument. Most pertinently, the *Madison* Court notes that although a debtor might have to pay more to replace his vehicle, the replacement would likely have fewer infirmities and might be in a generally better condition. *In re Madison*, 186 B.R. 182, 184 (Bankr. E.D. Pa. 1995). The *Madison* Court goes on to state that even if the vehicle was to be replaced, with all the infirmities of the original vehicle in place, the actual replacement value would be somewhere between the retail value and the wholesale value, as published in a well-recognized pricing guide.

In the present case, Plaintiff provides anecdotal evidence that his vehicle was kept in excellent condition. Furthermore, the repair estimate provided reflects the cost of brand new parts, amongst other things, which would likely have put the vehicle in a better condition than it was before the accident. Finally, the underlying motivation behind "totaling" a vehicle is that the cost to repair the vehicle outstrips the value of the vehicle. Although the vehicle may have personal and sentimental value to the owner, the free market may place a different price on its worth. Therefore, the Court will not allow Plaintiff to recover the difference between the Kelley Blue Book value of the vehicle and the amount it would have cost to repair it.

### 3. Lost Use of Automobile as Measured by the Cost of a Rental Car

Plaintiff maintains that he is entitled to receive compensation for the loss of use of his vehicle, which should be calculated based on the amount he would have spent to rent a comparable vehicle, even though he did not actually rent a substitute vehicle. The Court agrees with Plaintiff that the rental value of a similar vehicle is the proper measure of damages to compensate for the lost use of a vehicle.

Under the RESTATEMENT (SECOND) OF TORTS § 931(a) (1979),

[i]f one is entitled to a judgment for the detention of, or for preventing the use of, .... chattels, the damages include compensation for[:] (a) the value of the use during the period of detention or prevention or the value of the use of or the amount paid for a substitute, and (b) harm to

the subject matter or other harm of which the detention is the legal cause.

■ Moreover, "[t]he owner of the subject matter is entitled to recover as damages for the loss of the value of the use, at least the rental value of the chattel . . . during the period of deprivation." RESTATEMENT (SECOND) OF TORTS § 931 cmt. b (1979). In cases involving automobiles, courts have not been so stringent as to require that a party *actually* rent another vehicle in order to recover for the lost value of its use, especially considering the party may have access to a spare vehicle to use in the absence of the damaged one. *See Mountain View Coach Lines, Inc. v. Storms*, 102 A.D.2d 663, 665, 476 N.Y.S.2d 918 (N.Y. App. Div. 1984) ("There is no logical or practical reason why a distinction should be drawn between cases in which a substitute vehicle is actually hired and those in which the plaintiff utilizes a spare."). *See generally Brooklyn Eastern Dist. Term. v. U.S.*, 287 U.S. 170, 176-77, 53 S. Ct. 103, 77 L. Ed. 240 (1932) (explaining the "spare boat" doctrine, which essentially equates the cost of the practice of some ship owners to maintain an extra boat to serve as a substitute in case another vessel in the fleet is damaged to the cost of hiring a substitute boat if not spare is maintained).

■ In the present case, Plaintiff seeks damages for the two (2) months he was without the use of his car, and, he bases his figure for loss of use damages on the amount it would have cost to rent a car during that time, even though he did not actually do so. As explained above, courts have not interpreted the Restatement to require the actual rental of a vehicle before loss of use damages based on the rental cost may be awarded. Therefore, the Court will allow Plaintiff to recover damages for the two (2) months of lost use of his vehicle based on the figure representing the cost to rent a similar vehicle.

### 4. Attorney's Fees and Costs under V.I. Code Ann. tit 5, § 541

■ V.I. CODE ANN. tit. 5, § 541 (1997) governs the award of attorney's fees and costs in civil matters. As Plaintiff noted in his submission, the prevailing party routinely requests, and the Court often grants, an award for attorney's fees and costs, so long as they are provided for within the confines of the statute. Notably, the language of the statute and the case law are clear that the decision of whether to award costs and fees, and the amount to be awarded, is within the Court's discretion.

*Sebastian v. Estate of Fredericks*, 22 V.I. 78, 86 (Terr. Ct. 1986). "While the express language of Section 541(a) does not necessarily preclude the court from assessing costs other than those specifically enumerated, the court's discretion in taxing such costs is to be sparingly exercised." *Good Timez, Inc. v. Phoenix Fire and Marine Ins. Co.*, 754 F. Supp. 459, 461 (D.V.I. 1991) (citing *Kriegel v. St. Thomas Beach Resorts*, 18 V.I. 365, 365 (D.V.I. 1981), *aff'd without op.*, 676 F.2d 686 (3d Cir. 1982)). Moreover, local courts have consistently held that expenditures for messenger services, photocopying, phone calls and other normal office overhead expenses are not awardable pursuant to § 541. *Wenner v. Gov't of the V.I.*, 29 V.I. 158, 163 (D.V.I. 1993) (citing *Bedford v. Pueblo Supermarkets of St. Thomas, Inc.*, 18 V.I. 275, 278 (Terr. Ct. 1981)) (further citations omitted).

Therefore, in addition to the findings of fact, conclusions of law and proposed default judgment, Plaintiff shall submit an application for attorney's fees and costs that comports with the statute and case law referenced in the paragraph above.

Accordingly, it is hereby

**ORDERED** that on or before Friday, March 26, 2010, Plaintiff shall **SUBMIT** findings of fact, conclusions of law, a proposed judgment and an application for attorney's fees and costs in conformity with the Court's decision outlined above; and it is further

**ORDERED** that a copy of this Order shall be directed to counsel of record.